# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES C. McNEILL,                          )
                                           )
       Plaintiff,                     )
                                           )
                                           )
       v.                             )          1:18CV800
                                           )
SHAWN BRITT, et al.,                       )
                                           )
       Defendants.                    )


## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendants Monica Bond, Shawn L. Britt, Dane Bruce, Lachelle Bullard, Sylvia Crumpler, Karen L. Henderson, Dawn Leak, Pamela J. Locklear, Katy Poole, and George Warren's motion to dismiss, or in the alternative, motion to sever, and motion for summary judgment.[1] (Docket Entries 49 and 51.) Plaintiff James C. McNeill did not file a response to these motions. This matter is ripe for disposition. For the following reasons, the Court will recommend that Defendants' motion to dismiss be denied and Defendants' motion for summary judgment be granted in part and denied in part.

## I. BACKGROUND

On or about September 24, 2018, Plaintiff, a *pro se* prisoner of the State of North Carolina, filed a Complaint against Defendants pursuant to 42 U.S.C. § 1983 alleging constitutional claims sounding in due process violations, denial of access to the courts, a failure

---

[1] Some of the names referenced in the Complaint have been spelled incorrectly; however, the correct spellings of Defendants' names are noted above. (*See* Docket Entries 10, 16, 17.)

1

to investigate grievances, conditions of confinement, excessive force, retaliation, and deliberate indifference. (*See generally* Complaint, Docket Entry 2.) Plaintiff's claims arise out of incidents occurring while he was housed at Scotland Correctional Institution ("Scotland") from June 22, 2018, to July 2, 2018. (*Id.* at 13-24.)[2] Defendants include several prison officials serving in different capacities: Britt (correctional lieutenant); Henderson (correctional captain); Warren (unit manager); Bruce, Crumpler, and Leak (correctional officers); Bond (chief disciplinary hearing officer); Lachelle Bullard (program coordinator); Poole (facility administrator); and Locklear (correctional assistant superintendent of programs). (*See id.* at 2-3, 12-13; *see also* Docket Entries 10, 16, 17.) The facts of these events are explained below.

Plaintiff first alleges that on or about June 22, 2018, he was preparing to be handcuffed and escorted to the shower by Officers Crumpler and Shaquanna Barnes.[3] (*Id.* at 13.) During past escorts, prison officials applied two sets of handcuffs at Plaintiff's request to alleviate pressure due to recurring lower back pain even though Plaintiff did not have a medical order requiring this accommodation. (*Id.*) However, on this occasion Officer Crumpler attempted to handcuff Plaintiff using a single pair of handcuffs. (*Id.* at 14.) Plaintiff alleges that Officer Crumpler's attempt to force the single set of handcuffs on his wrists triggered his nerve pain, causing him to yell for the handcuff to be removed. (*Id.*) Plaintiff further alleges that Officer Crumpler slammed the prison cell's tray flap shut on his hand and left one handcuff dangling

---

[2] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[3] Officer Barnes has not been named as a defendant in this action.

2

on Plaintiff's wrist. (*Id.*) In this process, Plaintiff alleges that his finger was cut by Officer Crumpler. (*Id.*)

Plaintiff asserts that a few days before, he had filed two tort actions with the North Carolina Industrial Commission, one naming Officers Crumpler and Barnes and the other naming only Officer Barnes. (*Id.* at 13.) In addition, on June 18, 2018, disciplinary charges filed by Officer Barnes against Plaintiff were dismissed. (*Id.*) Based on these proceedings, Plaintiff alleges that the two officers possessed a retaliatory motive during the handcuffing incident on June 22, 2018. (*Id.* at 13-14.)

Following the handcuffing incident, Plaintiff was informed by other prison officials that he was being placed on "disruptive behavior" status for assaulting Officer Crumpler, which included the confiscation of Plaintiff's personal belongings, cell bed linens, and his mattress for several days. (*Id.* at 14.) Plaintiff responded to the prison officials that it was in fact he who was assaulted, and Plaintiff accused correctional staff of engaging in a cover up. (*Id* at 14-15.) Plaintiff additionally protested the confiscation of his legal material, claiming that he had several filing deadlines approaching for his tort claims and his criminal appeal, and that such confiscation would be detrimental to his ability to litigate these matters. (*Id* at 15.) Plaintiff then asked to speak to Captain Henderson, who had ordered the confiscation of Plaintiff's personal property. (*Id.*)

When Captain Henderson arrived, Plaintiff informed him of the handcuffing incident and his concerns about his lack of access to his legal material. (*Id.* at 15-16.) During this conversation, Plaintiff turned to walk to his bunk to retrieve proof of notices for upcoming trials, and unbeknownst to Plaintiff, Captain Henderson ordered another prison official,

Officer Jackson,[4] to pepper spray him. (*Id.* at 16.) Plaintiff alleges that Officer Jackson "emptied" his can of pepper spray onto Plaintiff and inside the cell. (*Id.*) The cell's tray flap and exhaust fan were closed, and Plaintiff was left in the locked cell for 20 minutes "while burning and unable to breath[e]." (*Id.*) Thereafter, Plaintiff was escorted out of his cell, refused medical treatment by medical staff,[5] and upon Captain Henderson's orders, Plaintiff's belongings, including legal material, bed linens and mattress, were removed from his cell. (*Id.*) Plaintiff's legal material were not returned to him until June 29, 2018. (*Id.*) Plaintiff alleges that this confiscation contributed to the dismissal of two of his tort cases. (*Id.*) Plaintiff additionally asserts that some of his legal materials were "stolen," including an affidavit for another tort claim, causing a motion hearing to be cancelled. (*Id.*) Plaintiff also alleges that the deprivation of his mattress for several days caused him severe back and nerve pain. (*Id* at 17.)

Plaintiff next alleges that on June 23, 2018, the day after the pepper-spray incident with Captain Henderson and Officer Jackson, he was experiencing severe chest and back pain causing him to request medical attention. (*Id.*) Correctional Officers Leak and Derrick Hicks[6] came to Plaintiff's cell to escort him to receive care. (*Id.*) Plaintiff was handcuffed, and a "black box" and waist chain was placed on him. (*Id.*) Plaintiff asserts that he requested a

---

[4] Officer Jackson has not been named as a defendant in this action.

[5] The Complaint alleges that "medical staff refused to treat" Plaintiff for his pain from his injured finger. (*See* Compl. at 16.) There are no further allegations regarding any deliberate indifference to a serious medical need related to this incident. Additionally, the Complaint does not appear to name any prison medical officials as defendants. Thus, the undersigned will not further address the issue of deliberate indifference to a serious medical need.

[6] Officer Hicks has not been named as a defendant in this action.

4

grievance form, and in response to his request, Officer Hicks tightened the waist chain further, causing Plaintiff pain. (*Id.*) When Plaintiff protested, Officer Hicks began "jerking" on the restraints and Officer Leak pepper-sprayed Plaintiff's eyes, head, and face. (*Id.*) Plaintiff was left handcuffed and in a waist chain inside his cell with no ventilation for approximately 22 minutes before being taken to the receiving area to shower. (*Id* at 17-18.)

On that same day, Plaintiff submitted two copies of a grievance requesting that his legal property be returned. (*Id.* at 18.) Plaintiff alleges that in the following days, correctional staff and supervisory officials including Unit Manager Warren and Facility Administrator Poole refused to process his grievance. (*Id.*) Plaintiff's grievance was finally rejected by Administrator Poole, on June 25, 2018. (*Id.*)

Plaintiff further alleges that on June 26, 2018, Lieutenant Britt and Officer Bruce visited Plaintiff's cell to ask if he wished to sign his disciplinary rights form regarding a disciplinary incident, to which Plaintiff agreed. (*Id.*) Plaintiff then agreed to write a statement but stated that he first needed to be informed of who the alleged assault victim is and that individual's written statement. (*Id.*) Lieutenant Britt responded that he is not required to read any statement, and an argument ensued that culminated in Lieutenant Britt and Officer Bruce leaving without providing Plaintiff an opportunity to be read witness statements, to request witness statements, or make a written statement of his own. (*Id.* at 18-19.)

Plaintiff claims that it was retaliatory for Assistant Superintendent Locklear to assign Lieutenant Britt to a disciplinary investigation, as Ms. Locklear had been named in several lawsuits filed by Plaintiff and Lieutenant Britt had been the subject of numerous complaints made by Plaintiff regarding incidents occurring in 2014 and 2015. (*Id.* at 19-20.)

5

Plaintiff further alleges that later the same day of June 26th, Officer Bruce returned and slid a disciplining rights form into Plaintiff's cell which indicated that Plaintiff had refused to sign. (*Id* at 20.) Plaintiff claims he was never informed that Lieutenant Britt was conducting two disciplinary investigations, and that he was denied due process in these cases as a result of no statements being read about the cases and Plaintiff's inability to give a statement and refute the allegations. (*Id.*) It was then that Plaintiff informed Officer Bruce of his intention to sue both him and Lieutenant Britt. (*Id.*) Plaintiff alleges that in response, Officer Bruce called for three additional correctional officers (Officers Oxendine and Bullard, and Brown[7]) to begin a cell search in retaliation for Plaintiff's statement. (*Id.*) Though he was without his personal property, Plaintiff claims that he possessed two handwritten legal documents, which were balled up and thrown in the trash by Officer Bruce. (*Id.*)

Plaintiff alleges that two hours later, his cell was again searched by Correctional Officers Bruce, Bullard, and Oxendine. (*Id.* at 20-21.) Plaintiff claims that he was forced to strip naked while the officers made taunts and derogatory comments as well as physical threats. (*Id* at 21.) Plaintiff also alleges that Unit Manager Warren was present and encouraged the officers to assault Plaintiff "if he even look wrong." (*Id.*) At some point thereafter, Plaintiff contacted Ms. Poole and Ms. Locklear regarding the incident, and they informed Plaintiff that he was being written up for a disciplinary matter. (*Id.*)

Later that day, Unit Manager Warren returned to Plaintiff's cell and stated that Plaintiff would be given two disciplinary charges for assaulting Officers Crumpler and Hicks on June 22 and 23, 2018. (*Id.*) Plaintiff responded that it was he who was assaulted, he was pleading

---

[7] Officer Brown has not been named as a defendant in this action.

6

"not guilty," and that he was again being deprived of due process due to his inability to make a written statement, request statements from witnesses, or to be read the written statement describing the allegations against him. (*Id* at 22.) Unit Manager Warren reminded Plaintiff of his refusal to make a statement to Lieutenant Britt during the investigation earlier that day. (*Id.*)

On June 28, 2018, a hearing was held by the Facility Classification Committee ("FCC") chaired by Program Coordinator Lachelle Bullock, which resulted in a recommendation that Plaintiff be placed in the most restrictive segregation housing unit ("HCON") for 180 days for assaulting two prison officers. (*Id* at 22-23.) Ms. Locklear and Ms. Poole "signed off" on the recommendation. (*Id.*) Plaintiff claims that this premature recommendation was a violation of his due process rights under the 14th Amendment because he had not yet been convicted of the assaults by a disciplinary officer during an actual disciplinary hearing. (*Id.* at 23.)

Indeed, according to Plaintiff, he did not attend a disciplinary hearing on the assault charges until July 2, 2018 with Hearing Officer Sean T. Dillard.[8] (*Id.*) Plaintiff claims that Dillard ignored his claims of assault and due process violations and instead found him guilty. (*Id.*) Plaintiff then wrote an appeal statement to Chief Disciplinary Hearing Officer Bond who upheld the guilty verdict. (*Id* at 24.) Plaintiff claims that the actions of Officer Bond violated his due process rights. (*Id.*)

---

[8] Officer Dillard has not been named as a defendant in this action.

Based upon the incidents described above, Plaintiff alleges that Defendants' actions violated his constitutional rights and have caused him to suffer physical harm and emotional trauma. (*Id.* at 5.) Plaintiff seeks monetary damages as well as declaratory relief. (*Id.*)

Based upon a thorough review of the Complaint, the Court concludes that the following claims have been alleged:

1. A retaliation claim and excessive force claim against Defendant Crumpler regarding the handcuffing incident;

2. A claim for denial of access to the courts against Defendant Henderson regarding her improper removal of legal documents on June 22, 2018 after the handcuffing incident;

3. An excessive force claim against Defendant Henderson for ordering the deployment of pepper-spray on Plaintiff by Officer Jackson;

4. A claim challenging conditions of confinement against Defendant Henderson for ordering the removal of bed linens and mattress for approximately seven days;

5. An excessive force claim against Defendant Leak for the pepper-spray incident on June 23, 2018;

6. A claim for failure to investigate and process grievances against Defendants Warren and Poole;

7. A due process claim against Defendants Britt and Bruce for failing to read witness statements to Plaintiff prior to submitting his own statements during the initial investigation process;

8

8. A retaliation claim against Defendant Bruce for ordering and conducting cell and strip searches after Plaintiff's threats to pursue legal action;

9. A claim for denial of access to the courts against Defendants Oxendine, Officer Bullard[9] and Bruce regarding the improper removal of legal documents during the June 26, 2018 cell search;

10. A due process claim against Defendants Lachelle Bullard, Poole and Locklear for prematurely recommending Plaintiff be placed on the restrictive housing unit prior to the adjudication of his assault charges; and

11. A due process claim against Defendant Bond for improperly upholding the disciplinary conviction related to Plaintiff's July 2, 2018 disciplinary hearing.

(*See generally* Compl.)

On January 22, 2019, Defendants Bond, Britt, Henderson, Locklear, and Poole filed an Answer to Plaintiff's Complaint. (Docket Entry 10.) On October 17, 2019, Defendants Bruce, Leak, and Lachelle Bullard filed an Answer to the Complaint. (Docket Entry 16.) On October 23, 2019, Defendants Warren and Crumple filed an Answer. (Docket Entry 17.)

---

[9] The record reflects that service was never effectuated upon Defendant Oxendine. (*See* Docket Entry 9 at 7; Docket Entry 15.) Additionally, while the docket reflects service upon Defendant Officer L. Bullard, it appears that Defendant Lachelle Bullard, Program Coordinator (improperly named "La Shae Bullock"), accepted service and was the sole of the two defendants to answer the Complaint. (*See* Docket Entry 16 (Defendant Lachelle Bullard's answer to Complaint); Docket Entry 24 (noting returned executed summons for "L. Bullard"); Docket Entry 25 (noting "unclaimed" returned summons for "La Shae Bullock").) Thus, Officers L. Bullard and Oxendine, having not been served in this action, should be dismissed for failure to prosecute. However, even if the Court were to find that Defendant Officer L. Bullard properly accepted service, the denial of access claim against him should be denied for reasons further discussed herein.

After discovery ended, the moving Defendants filed the pending motions. (*See* Docket Entries 49, 51.)

## II. DISCUSSION

### 1. <u>Defendants' Motion to Dismiss or in the Alternative to Sever Parties</u>

Defendants first move to dismiss this case for Plaintiff's failure to comply with Civil Procedure Rule 8. (*See* Docket Entry 50 at 3-5.) Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This purpose is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Fair notice is provided by setting forth enough facts for the complaint to be "plausible on its face" and "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (internal citations omitted). When determining whether to dismiss a complaint for failure to comply with Rule 8(a), courts have looked to various factors, including "the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel[.]" *North Carolina v. McGuirt*, 114 F. App'x 555, 558 (4th Cir. 2004) (internal citations omitted).

Here, Plaintiff's Complaint, together with attachments spans approximately 30 pages and attempts to assert claims against approximately 12 Defendants.[10] (*See generally* Compl.)

---

[10] The undersigned notes that the Complaint discusses other prison officials not named as defendants in the instant action, and references other legal actions making it somewhat difficult to decipher Plaintiff's claims.

However, the Court cannot conclude that the Complaint was so unclear such that moving Defendants were unable defend themselves, particularly given that said Defendants answered the Complaint (*see* Docket Entries 10, 16, 17), thereafter engaged in discovery, and have now moved for summary judgment. *See Korthas v. City of Auburn*, No. 5:04-CV-537(NPM/GHL), 2006 WL 1650709, at *3 (N.D.N.Y. June 9, 2006) (unpublished) ("[T]he Defendants promptly answered both the original and the amended complaints, and in doing so, demonstrated that the complaints were adequate and/or were not unintelligible."); *Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (citation omitted) (same). Finally, the Court notes that Plaintiff is proceeding *pro se* rather than with the assistance of counsel. Thus, Plaintiff's Complaint must be read with some degree of liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.").

The undersigned thus concludes that dismissal of Plaintiff's Complaint against moving Defendants with prejudice for failure to comply with Rule 8(a) would be inappropriate. Indeed, such dismissal "tends to undermine one of the policies of the Federal Rules of Civil Procedure: facilitating a decision on the merits rather than on pleading technicalities." *McGuirt*, 114 F. App'x at 559. Defendants' motion to dismiss on this ground should therefore be denied.[11] *Rush v. Am. Home Mortg., Inc.*, No. CIV.A WMN07CV0854, 2009 WL 4728971,

---

[11] The undersigned notes that Defendants rely upon the holding in *Dillard v. Perry*, No. 5:16-CT-3329-FL, 2019 WL 1244701, at *5 (E.D.N.C. Mar. 18, 2019) (unpublished). *Dillard* is distinguishable from the instant matter in that the plaintiff there was previously directed, earlier in the matter, to file an amended complaint (*see id.* at *3), with detailed instructions on how to do so. Here,

Case 1:18-cv-00800-LCB-JLW   Document 64   Filed 07/21/21   Page 11 of 33

at *4 (D. Md. Dec. 3, 2009) (unpublished) ("[U]nder the liberal pleading standards granted to a *pro se* Plaintiff, Plaintiff's Complaint is sufficient and will not be summarily dismissed on Rule 8 grounds.").

Alternatively, Defendants contend that if dismissal under Rule 8 is not appropriate at this stage of litigation, the Court should sever the case pursuant to Federal Rules of Civil Procedure 20 and 21. (*See* Docket Entry 50 at 5-7.) Rule 20(a) provides that all persons may join in one action as defendants if "any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common" to all such persons will arise in the action. Fed. R. Civ. P. 20(a). In addition, Rule 20(b) provides that the court may order separate trials or make other orders to protect a party and prevent delay, expense or prejudice. Fed. R. Civ. P. 20(b). Defendants also cite to Rule 21 which provides that "[m]isjoinder of parties is not a ground for dismissing an action[,]" but "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The rule also permits the Court to sever any claim against a party. (*Id.*)

Though Defendants' brief does not specifically assert as much, the Court presumes, given the procedural posture of this case, that they are seeking to sever this case for purposes of trial. When determining whether to sever a case for trial, the court should consider

> whether the risks of prejudice and possible confusion are outweighed by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one,

---

the Court did not previously instruct Plaintiff to amend or clarify his pleadings, and Defendants did not raise this issue until the summary judgment stage.

> and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Watkins v. Hosp. Grp. Mgmt. Inc.*, No. 1:02CV00897, 2003 WL 22937710, at *11 (M.D.N.C. Dec. 1, 2003) (unpublished) (internal quotations and citations omitted). Ultimately, the decision of whether or not severance is appropriate is within the sound discretion of the Court. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (unpublished) (citation omitted).

Here, the undersigned finds that severance of this case is inappropriate. As further discussed below, the Court concludes that the issues remaining for trial are narrowed such that there should be little risk of prejudice or confusion. Additionally, given the narrowed issues, resolving this matter in a single trial should be less burdensome on both parties and will appropriately conserve judicial resources. Thus, Defendants' motion to sever should be denied.

## 2. **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment in this matter. (Docket Entry 51.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

13

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting).

When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49.

Defendants move for summary judgment on several grounds. First, Defendants contend that they are entitled to qualified immunity because there has been no constitutional violation. (Docket Entry 52 at 5-6.) Next Defendants contend that they are entitled to summary judgment as a matter of law as to any claims against them in their official capacity. (*Id.* at 6.) Third, Defendants in supervisory roles contend that summary judgment is warranted as to any claims against them in such capacities. (*Id.* at 7-8.) Defendants also contend that no claims can prevail against them which Plaintiff does not allege were personally depriving him of his rights. (*Id.* at 8-9.) Fifth, Defendants asserts that plaintiff cannot prevail on claims of

conspicuously against Defendants.[12]  (*Id.* at 9-10.)  Defendants also assert additional grounds for summary judgment: (1) Plaintiff cannot maintain a claim based on failure to investigate his grievances; (2) Plaintiff's challenges to his conditions of confinement fail; (3) Plaintiff's challenge to his disciplinary adjudication fails; (4) Plaintiff is unable to show an actual injury for his claim for denial of access to the courts; (5) Plaintiff's due process claim fails; and (6) Plaintiff's claims for retaliation fail as a matter of law.  (*Id.* at 10-18.)  Defendants also assert that Plaintiff has failed to exhaust his administrative remedies prior to filing this action as required by the Prisoner Litigation Rights Act, 42 U.S.C. § 1997e(a) ("PLRA").  (*Id.* at 18-19.)  Last, Defendants assert that Plaintiff fails to assert any claims against Defendant Locklear.  (*Id.* at 20.)  The undersigned will address the arguments below.[13]

## A. Exhaustion of Administrative Remedies

The PLRA requires inmates to properly exhaust administrative remedies before filing civil actions challenging the conditions of their confinement.  *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Moore*, 517 F.3d at 725.  It is well-settled by now that Section 1997e's exhaustion requirement is mandatory.  *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Woodford*, 548 U.S. at 90-91 (stating that the PLRA requires "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules"); *Anderson v. XYZ Correctional*

---

[12]  The undersigned does not read Plaintiff's Complaint to assert a separate conspiracy claim. Thus, this argument is not further addressed herein.

[13]  Plaintiff failed to file a response to Defendants' summary judgment motion.  Per the local rules, a motion such as this should "be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."  L.R. Civ. P. 7.3(k).  However, "the Fourth Circuit still requires that unopposed motions to dismiss and unopposed motions for summary judgment be reviewed to determine if dismissal is proper."  *Jones v. SSC Durham Operating Co., LLC*, No. 1:17CV686, 2019 WL 290036, at *2 (M.D.N.C. Jan. 22, 2019) (citing *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014)).

*Health Servs., Inc.*, 407 F.3d 674, 676-77 (4th Cir. 2005) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

Here, Defendants acknowledge that the Court may take judicial notice of the North Carolina Department of Public Safety's ("NCDPS") Administrative Remedy Procedures ("ARP") which are publicly available on the NCDPS website. (*See* Docket Entry 52 at 19 n.1.) While the grievance procedures are publicly available on the NCDPS website and the Court is entitled to take judicial notice of said document, *see Fauconier v. Clarke*, 652 F. App'x 217, 219 n.4 (4th Cir. 2016), Defendants do not otherwise forecast any evidence to support their argument on the issue of whether Plaintiff exhausted his administrative remedies. Plaintiff's Complaint contends that several grievances were submitted and ignored while another was rejected because it concerned disciplinary proceedings.[14] (*See* Compl. at 6-7, 26-27.)

The Court recognizes that a prisoner's failure to exhaust administrative remedies may be excused when prison officials hinder, delay, or otherwise prevent prisoners from availing themselves of administrative procedures. *See Hill v. Haynes,* 380 F. App'x 268, 270 (4th Cir. 2010); *see also Patel v. Moron*, 897 F. Supp. 2d 389, 398 (E.D.N.C. 2012) ("[A] prisoner is not responsible when he follows the proper grievance procedures and prison officials nevertheless mishandle the grievance."). Without any supporting documentation, for example Plaintiff's grievance records, Defendants simply argue that Plaintiff was fully aware of the ARP process, he has filed numerous grievances on unrelated matters, and that his grievances were not

---

[14] The ARP indicates that grievances challenging a disciplinary action are rejected. *See* N.C. Dep't Pub. Safety, Policy and Procedure Manual, Ch. G, § .0306(b)(3), https://files.nc.gov/ncdps/div/Prisons/Policy_Procedure_Manual/G.0300_08_01_13.pdf (last visited July 7, 2021).

ignored in this matter. (*See* Docket Entry 52 at 20.) Standing on this argument alone, the undersigned concludes that Defendants have not met their initial burden of demonstrating an absence of a genuine issue of material fact on this issue. Thus, summary judgement should not be granted in Defendants' favor on this point.

## B. <u>Official Capacity Claims</u>

Defendants argue that any claims against them in their official capacities should be dismissed as a matter of law. (Docket Entry 52 at 6-7.) The undersigned agrees. The Eleventh Amendment prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State of North Carolina is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 673 S.E.2d 374, 380-81 (N.C. Ct. App. 2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v, Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted). Indeed, "[w]here [Section 1983's] provisions allow for suit against a 'person,' and in suits for money damages, neither the state nor a state agency is deemed a 'person,' [thus] this claim cannot be maintained by plaintiff against [the State]." *Savage v. N. Carolina Dep't of Corr.*, No. 5:06-CV-171-FL, 2007 WL 2904182, at *5 (E.D.N.C. Sept. 29, 2007) (unpublished). Additionally, compensatory damages are unavailable in official capacity suits under § 1983. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

17

Here, to the extent Plaintiff has filed suit against Defendants in their official capacities, it would be against the NCDPS and the State of North Carolina. *Green*, 203 N.C. App. at 268, 690 S.E.2d at 762. Neither has consented nor waived immunity; therefore, any monetary claims against Defendants in their official capacities should be dismissed.[15] *Floyd v. N. Carolina Dep't of Corr.*, No. 1:11-CV-80-RJC, 2011 WL 1499669, at *2 (W.D.N.C. Apr. 19, 2011) ("[T]he Eleventh Amendment protects state employees acting in their official capacities from suits for damages.") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Kelly v. Maryland*, 267 Fed. Appx. 209, 210 (4th Cir. 2008) (citation omitted) ("It is now well settled that a state cannot be sued under § 1983.").

## C. Supervisory Defendants

Defendants also assert that Plaintiff's claims against those in supervisory roles should be dismissed. (Docket Entry 52 at 7-8.) Defendants in supervisory roles may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and

---

[15] Although Plaintiff, in conclusory fashion, states that he seeks declaratory relief, (*see* Compl. at 5), such is relief is moot as he is no longer incarcerated at Scotland. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").

(3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Fourth Circuit has held that

> [o]rdinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

*Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984) (internal citation omitted).

Here, Plaintiff's due process claim against Defendants Poole and Locklear appear to be purely supervisory in nature. (*See* Compl. at 23.) While Plaintiff contends, and even if it is true that Defendants "signed-off" on his premature placement in restrictive housing in violation of his constitutional rights, he does not provide evidence of similar occurrences beyond this single isolated incident. *See Slakan*, 737 F.2d at 373 (isolated incidents insufficient to satisfy burden of proof). Summary judgement should thus be granted in favor of these defendants.

### D. **Personal Deprivation of Rights**

Defendants next contend that "Plaintiff does not allege that *each* and every Defendant committed *all* the specific constitutional violations in the complaint." (Docket Entry 52 at 9 (emphasis added).) Defendants' argument is unpersuasive. While it is true that an individual § 1983 claim must affirmatively show "that the official charged acted personally in the

19

deprivation of the Plaintiff's rights[,"] *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985), the Court is unaware of, nor has Defendants cited, any statute or case law requiring *all* defendants in a § 1983 action be involved in *all* the alleged unconstitutional acts in a complaint. Thus, this argument does not warrant summary judgment in Defendants' favor.

### E. <u>Failure to Investigate Grievances</u>

Defendants next contend that to the extent alleged in the Complaint, Plaintiff cannot maintain an action against Defendant Poole and others for failing to process and investigate his grievances. (Docket Entry 52 at 10-11.) Defendants are correct. Claims pursuant to § 1983 require "a plaintiff to allege facts indicating the deprivation of federal rights by one acting under color of law." *McMillan v. Vaught*, No. 1:19-CV-591, 2019 WL 8223613, at *3 (E.D. Va. Sept. 10, 2019) (unpublished) (citation omitted). "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). Thus, there is "no fundamental right to a grievance system nor is there a fundamental right requiring prison administrators investigate prisoner complaints." *Mitchell v. Murray*, 856 F. Supp. 289, 294 (E.D. Va. 1994).

Here, as to Plaintiff's claim that Defendants Warren and Poole failed to investigate or further process his prison grievances, there is no constitutional right requiring such acts. Thus, summary judgment should be granted as to this argument and any claims for failure to investigate or process grievances should be dismissed. *See Adams v. Rice*, 40 F.3d 72, 75 (4th

Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

## F. Challenges to Conditions of Confinement

Defendants next assert that Plaintiff's claims regarding his conditions of confinement fail because Plaintiff has not alleged, nor can he prove, a serious deprivation of a basic human need. (Docket Entry 52 at 11-13.) In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" *Id.* at 832 (internal quotation and citation omitted). A successful Eighth Amendment claim contains two elements: the deprivation must be, objectively, "sufficiently serious," and the prison official must have demonstrated a "deliberate indifference to inmate health or safety." *Id.* at 834. As Defendants assert, the sufficiently serious deprivation must result in "extreme" deprivation. *See Scinto v. Stansberry*, 841 F.3d 219, 234 (4th Cir. 2016) ("Only an 'extreme deprivation' is actionable under the Eighth Amendment.").

Here, to the extent Plaintiff asserts a conditions-of-confinement claim against Defendant Henderson for the temporary removal of personal possessions, bed linens, and a mattress, it fails. Even considering the facts as true, Plaintiff's temporary deprivation of his items for approximately seven days is not the type of extreme deprivation actionable under the Eighth Amendment. *See Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (holding that 6-month exposure to vermin, human feces, unbearable heat, cold an inadequate food portions,

and other conditions was not so atypical to impose significant hardship). *See also Lucas v. Lowicki*, No. CV GJH-17-1018, 2018 WL 4384154, at *5 (D. Md. Sept. 14, 2018) (unpublished) (no constitution violation for "10 days naked without a mattress, blanket and bedsheets under extremely cold cell temperature with inadequate ventilation system and unsanitary floor with excessive dust, lint particles, mold on the wall, no toiletries and shower taken, limited food, and toxic fumes"); *Wagner v. Warden*, No. CIV.A. ELH-14-791, 2015 WL 1276749, at *41 (D. Md. Mar. 19, 2015) (unpublished) (denying Eighth Amendment claim where inmate complained he was placed for two days in a cold cell without a mattress, toiletries, or running water, and with feces and urine on the floor because "the times he was allegedly placed in these conditions was brief."); *Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (no constitution violation for four days without clothes, mattress, water, bedding, legal mail or hygienic supplies). Thus, Defendants should be granted summary judgement as to Plaintiff's claim challenging his conditions of confinement.

## G. Denial of Access to the Courts

Next, Defendants argue that Plaintiff cannot proceed on his claims for denial of access to the courts for any alleged improper confiscation of his legal material. (Docket Entry 52 at 14-15.) Prisoners have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). To establish a *prima facie* claim of denial of access to the courts, a prisoner cannot rely on conclusory allegations; instead, he must identify a specific, actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). "The injury

requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded." *Adams-Bey v. Rogers*, No. 3:17-CV-210-FDW, 2018 WL 2292763, at *3 (W.D.N.C. May 18, 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Here, while Plaintiff alleges that the removal of his legal material on June 22, 2018 "contributed" to the dismissal of two of his tort claims (*see* Compl. at 15-16), there is no evidence detailing the specific materials, how they relate to his tort claims, and how it was the confiscation of those materials that caused the dismissal of his claims. In addition, there is no evidence detailing any actual injury regarding the confiscation of this legal material during the June 26, 2018 cell search. (*See id.* at 20.) Without establishing an actual injury, Plaintiff's allegations that his legal matters have been hindered or negatively impacted by Defendants' conduct are insufficient for these denial of access to the courts claims to proceed.[16] *See Ladner v. Hull*, No. 1:11CV1290 TSE/IDD, 2013 WL 3158620, at *2 (E.D. Va. June 18, 2013) (unpublished) ("[P]laintiff failed, in both the Amended Complaint and in his opposition to the Motion for Summary Judgment, to give sufficient details concerning an actual injury."); *Pearson v. Simms*, 345 F. Supp. 2d 515, 520 (D. Md. 2003) ("Plaintiff has not alleged, much less demonstrated that the materials . . . were related to his underlying conviction or to the conditions of his confinement. Without greater specificity, plaintiff's claim fails."), *aff'd*, 88 F.

---

[16] The Court notes that even if Defendant Henderson's role in the removal of Plaintiff's legal materials were limited to her supervisory capacity, a claim in such role would nevertheless fail because there is no underlying constitutional violation. *See Phillips v. Bailey*, 337 F. Supp. 2d 804, 807 (W.D. Va. 2004) (citations omitted) ("It is well settled that there can be no supervisory liability when there is no underlying violation of the Constitution.").

23

App'x 639 (4th Cir. 2004). Thus, Defendants' summary judgment motion should be granted as to Plaintiff's claims against Defendants for denial of access to the courts.

## H. <u>Retaliation</u>

Defendants also assert that Plaintiff's claims for retaliation fail as a matter of law. (Docket Entry 52 at 17-18.) To establish a claim of retaliation in the prisoner context, an inmate must show that the allegedly "retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." *Cochran,* 73 F.3d at 1318 (citation omitted). An inmate must provide facts demonstrating that the exercise of some constitutional right was a substantial factor motivating the retaliatory conduct. *See Wagner v. Wheeler,* 13 F.3d 86, 90-91 (4th Cir. 1993). Secondly, an inmate must show that the retaliatory conduct complained of adversely affected his constitutional rights. *ACLU of Maryland, v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). Undoubtedly, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Id.* Furthermore, there must be a causal relationship between the protected constitutional activity and a defendant's conduct. *Smith v. Lytle*, No. 1:19-CV-00260-MR, 2020 WL 2557823, at *3 (W.D.N.C. May 20, 2020) (unpublished).

The Fourth Circuit has clearly stated that a plaintiff "must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension." *Daye v. Rubenstein*, 417 F. App'x 317, 319 (4th Cir. 2011) (citation omitted). Thus, allegations which foster a "[m]ere 'temporal proximity' between the inmate's protected activity and the official's allegedly retaliatory act 'is simply too slender a reed on

24

which to rest' a retaliation claim." *Allen v. Anderson*, No. 5:13-CT-3238-FL, 2017 WL 4126345, at *13 (E.D.N.C. Sept. 18, 2017) (citation omitted), *order corrected on denial of reconsideration*, No. 5:13-CT-3238-FL, 2018 WL 1542232 (E.D.N.C. Mar. 29, 2018), *aff'd*, 736 F. App'x 416 (4th Cir. 2018). Courts generally treat claims of retaliation in the prison context with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Rice*, 40 F.3d at 74.

Here, Plaintiff's Complaint alleges retaliation claims regarding Defendant Crumpler's handcuffing incident and Defendant Bruce's June 26, 2018 cell search. Turning first to the former, Plaintiff has failed to forecast any evidence demonstrating beyond merely speculating that Defendant Crumpler and Officer Barnes forcefully and improperly handcuffed Plaintiff "with motive for retaliation" for the filing of his tort claims. (*See* Compl. at 13-14.) "Such speculation does not constitute a forecast of evidence to satisfy the summary judgment standard." *Mohammed v. Beaver*, No. 5:18-CV-00165-MR, 2021 WL 1147169, at *9 (W.D.N.C. Mar. 25, 2021) (unpublished). As Plaintiff has alleged no facts nor presented any evidence beyond his conclusory statements to create a genuine issue of material fact, summary judgment should be entered in favor of Defendant Crumpler with respect to this claim. *See Sumpter v. Crib*, No. CIV.A. 8:14-180-MGL, 2015 WL 3400437, at *8 n.9 (D.S.C. May 27, 2015) (unpublished) ("Plaintiff alleges that Defendants' retaliation was in response to the lawsuit Plaintiff filed against Defendants; however, Plaintiff has provided no evidence beyond his own conclusory statements to create a genuine issue of material fact.").

In addition, Plaintiff's claim that Defendant Bruce ordered and conducted searches in retaliation of him threatening to file a lawsuit is also speculative. Furthermore, Plaintiff fails

to demonstrate that he has suffered an adverse action necessary for a retaliation claim under the First Amendment. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) ("For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights."). Even if the searches were a result of Plaintiff's threat to sue, it did not prevent Plaintiff from doing so. Indeed, he was able to file the instant lawsuit; thus, his access to the courts was not hindered. *See Ansel v. Hicks*, No. 1:11-CV-114-RJC, 2012 WL 4511187, at *11 (W.D.N.C. Sept. 30, 2012) (no adverse action where Plaintiff was able to file written grievances and a subsequent lawsuit despite prison officials' conduct). In sum, the retaliation claims against Defendants Bruce and Crumpler should be dismissed.[17]

## I.  Disciplinary Charges/Hearing/Adjudication Challenge

Next, Defendants assert that Plaintiff's claims regarding his disciplinary hearing and final adjudication fail. (Docket Entry 52 at 16-17.) Relevant here, Plaintiff alleges that Defendants Britt and Bruce failed to read witness statements to Plaintiff prior to submitting his own statements during the initial investigation process. (*See* Compl. at 18-20.) Next, Plaintiff states that Defendant Lachelle Bullard recommended that Plaintiff be placed on the restrictive segregated housing unit prior to the adjudication of his assault charges. (*See id.* at

---

[17] Plaintiff's Complaint also mentions verbal threats and harassing statements made by Defendant Bruce and others during the search. (*See* Compl. at 21.) The Court notes, however, that verbal threats and harassment alone do not constitute Eighth Amendment violations. *See Henslee v. Lewis*, 153 F. App'x 179, 179 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983."); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990) ("[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.") (internal quotes and citation omitted).

26

23.) Last, Plaintiff claims that Defendant Bond improperly upheld the disciplinary conviction related to Plaintiff's July 2, 2018 disciplinary hearing. (*See id.* at 24.)

To prevail on either a procedural or substantive due process claim, a prisoner must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *See Plyler v. Moore,* 100 F.3d 365 (4th Cir. 1996). Relevant here, a prisoner "may have a state-created liberty interest in certain prison confinement conditions," *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015), however, to give rise to due process protection, "the denial of such an interest [must] impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 249 (citation omitted). What constitutes "ordinary incidents of prison life" for a particular inmate is a fact-specific inquiry and depends on the inmate's "normative baseline." *Incumaa v. Stirling,* 791 F.3d 517, 527 (4th Cir. 2015), *as amended* (July 7, 2015). "Then, with the baseline established, [the Court must] determine whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Id.*

If an inmate's liberty interest is implicated, due process requires that he receive "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)). Additionally, there must be "some evidence" in the record to support the findings of the prison disciplinary board

Case 1:18-cv-00800-LCB-JLW   Document 64   Filed 07/21/21   Page 27 of 33

"from which the conclusion of the administrative tribunal could be deduced. . . ." *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immigr.,* 273 U.S. 103, 106 (1927)).

At the outset, the Court notes that Plaintiff bears no constitutional claim against Defendants Britt and Bruce for their failure to read witness statements to Plaintiff prior to submitting his own statements during the initial investigation process. Due process only requires *advance* written notice of the disciplinary charges. *Hill,* 472 U.S. at 454. Plaintiff's own allegations seemingly acknowledges receipt of *advance* notice of both disciplinary charges. (*See* Compl. at 18 (Plaintiff admitting to signing one disciplinary rights form); Compl. at 20 (Plaintiff receiving a second disciplinary rights form).) Thus, the actions of Defendants Britt and Bruce during the initial investigation process do not establish a constitutional violation.

Similarly, there is no constitution violation for Defendant Lachelle Bullard's recommendation that Plaintiff be placed in the restrictive segregated housing unit prior to the adjudication of his assault charges. Plaintiff alleges that Defendant Lachelle Bullard and the FCC merely *recommended* certain consequences as a result of the disciplinary charges, but Plaintiff does not otherwise allege nor set forth evidence demonstrating that he was in fact prematurely placed in the segregated unit prior to the actual disciplinary hearing on July 2, 2018. (*See* Compl. at 22-23.) Again, the actions here of Defendant Lachelle Bullard, in the form of a mere recommendation, do not implicate the due process protections afforded during an actual disciplinary hearing. Plaintiff acknowledges that a disciplinary hearing did in fact take place and he was found guilty by a hearing officer. (*See id.*) Thus, the due process claim against Defendant Lachelle Bullard for her role in recommending restrictive housing placement is not a constitutional violation.

The conclusion as to Defendant Bond, however, differs as she was the chief disciplinary officer who upheld Plaintiff's disciplinary charge. Plaintiff alleges that his due process rights were violated by essentially asserting that he was denied a right to a fair and impartial hearing by Defendant Bond, thereby challenging the validity of the hearing itself. (*See* Docket Entry 52 at 16-17.) Here, the undersigned first notes that the record does not establish what the normative baseline for Plaintiff was during the relevant time period to determine if a liberty interest was implicated. Defendants state that "the ordinary incidents of prison life for [Plaintiff were] close custody maximum control in a single occupancy cell. This was his baseline before he was disciplined." (*Id.* at 14.) However, there is nothing in the record supporting this assertion that Plaintiff was subject to close custody maximum control in a single occupancy cell at that time prior to the disciplinary hearing.

Furthermore, the undersigned is not able to conclude as a matter of law that there is "some evidence" in the record to support the findings of Defendant Bond and the prison disciplinary board in upholding the charge against Plaintiff. Defendants contend that Defendant Bond properly relied on the reports of others that investigated the subject incident. (*See id.* at 17.) However, Defendants failed to submit any evidence supporting this argument. Instead, the record is only Plaintiff's allegations that he did not have an opportunity to put forth a defense during the disciplinary proceeding of which Defendant Bond was aware. (*See* Compl. at 23-24.) Defendants rely upon the holding in *Stultz v. Tripp*, No. 5:13-HC-2082-FL, 2014 WL 3955678, at *2 (E.D.N.C. Aug. 13, 2014) (unpublished). However, that court's holding that "some evidence" was sufficient to support the hearing officer's finding was based in large part of the court's review of the disciplinary hearing record. *See id.* at *1-2, 4. Here,

such information is not part of the Court's record. Therefore, the Court concludes that summary judgment should not be granted in Defendant Bond's favor as there are genuine issues of material fact regarding Plaintiff's ordinary incidents of prison life at the relevant time period and the sufficiency of the evidence during this disciplinary hearing.

## J. **Excessive Force**

As stated above, the Complaint also alleges excessive force claims against Defendants Crumpler, Henderson, and Leak for their use of force during the handcuffing incident and the two pepper-spray incidents. (*See* Compl. at 13-14, 16-18.) The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (internal quotation omitted). Prison officials have an "an affirmative "obligation to take reasonable measures to guarantee [inmate's] safety." *Id.* (internal quotations omitted). Accordingly, when evaluating an excessive force claim, the Court "must determine 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Id.* at 98 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). To make this determination, the Court considers two elements: "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

Here, while Defendants' brief acknowledges that Plaintiff's Complaint in part alleges excessive force violations (*see* Docket Entry 52 at 1), they put forth no specific argument on this issue nor forecast any evidence on their part as to their conduct, including possibly

affidavits or incident reports, during the relevant incidents. Thus, having failed to meet their burden of showing there is no genuine issue of any material fact regarding Plaintiff's claims of excessive force, summary judgment should not be granted in their favor on this issue.

## K. <u>Qualified Immunity</u>

Defendants also assert that qualified immunity shields Defendants from Plaintiff's claims. (Docket Entry 52 at 5-6.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]" (emphasis added)). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010) (citation omitted). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009). Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Case 1:18-cv-00800-LCB-JLW   Document 64   Filed 07/21/21   Page 31 of 33

A discussed above, setting aside Plaintiff's due process claim against Defendant Bond and excessive force claims against Defendants Crumpler, Leak and Henderson, Plaintiff has not demonstrated a violation of his constitutional rights as to his remaining claims. Therefore, this undersigned concludes that Defendants Crumpler, Henderson, Warren, Poole, Britt, Bruce, Lachelle Bullard, and Locklear are entitled to qualified immunity as to Plaintiff's remaining claims. *See Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007) (finding that "[i]f [an official] did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there"); *Parker v. Burris,* 2015 WL 1474909, at *8 (M.D.N.C. Mar. 31, 2015) (finding that "the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis"), *report and recommendation adopted*, No. 1:13CV488, 2015 WL 2169148 (M.D.N.C. May 8, 2015), *aff'd*, 623 F. App'x 82 (4th Cir. 2015).

However, the undersigned is unable to conclude that Defendants Bond, Crumpler, Leak and Henderson are entitled to qualified immunity as to Plaintiff's due process and excessive force claims. As previously discussed, there are genuine issues of material fact as to whether a constitutional violation occurred. Beyond that, the summary judgment brief fails to provide any basis for the Court to determine that these Defendants are entitled to qualified immunity on Plaintiff's due process and excessive force claims. *Brattain v. Stanly Cty. Bd. of Educ.*, No. 1:19CV1037, 2020 WL 6364718, at *6 (M.D.N.C. Oct. 29, 2020) (unpublished) ("[D]efendant . . . bears the burden of proof on the question of whether the right in question was clearly established at the time of the alleged misconduct.") Thus, they should not be entitled to qualified immunity at this juncture.

32

## III. CONCLUSION

For the reasons stated herein,

**IT IS HEREBY RECOMMENDED** that Defendants Monica Bond, Shawn L. Britt, Dane Bruce, Lachelle Bullard, Sylvia Crumpler, Karen L. Henderson, Dawn Leak, Pamela J. Locklear, Katy Poole, and George Warren's Motion to Dismiss or in the Alternative, Motion to Sever Parties (Docket Entry 49) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 51) be **GRANTED IN PART** to the extent that all claims against Defendants Britt, Bruce, Lachelle Bullard, Poole, and Warren be **Dismissed**, the retaliation claims against Defendants Crumpler be dismissed, and the denial of access to the courts and conditions of confinement claims against Defendant Henderson be **Dismissed**. The summary judgment motion should be **DENIED IN PART** as to Plaintiff's due process claim against Defendant Bond and excessive force claims against Defendants Crumpler, Henderson, and Leak.

**IT IS FURTHER RECOMMENDED** that Defendant Defendants Correctional Officer (FNU) Oxendine and Correctional Officer L. Bullard be dismissed from this action for failure to prosecute.

_____
Joe L. Webster
United States Magistrate Judge

July 21, 2021
Durham, North Carolina

33